CHATELAIN, Judge,
concurring for additional reasons.
11Although at the end of the day[1] I concur in the opinion of the court, I nevertheless write separately to discuss self-representation and its effect on the requisite impartiality of the trial court.
It appears that the self-represented litigant is a growing concern in Louisiana.[2] Initially, I note the Louisiana District Judges Association Self-Represented Litigation Subcommittee proposed changes to Louisiana Judicial Canon 3(A)(4), the adjudicative responsibilities of the trial judge. Effective March 18, 2013, the Louisiana Supreme Court approved amendments to Canon 3(A)(4) to provide, in pertinent part, “A judge may make reasonable efforts, consistent with the law and court rules, to facilitate the abilities of all litigants, including self-represented litigants, to be fairly heard, provided, however, that in so doing, a judge 1 {.should not give self-represented litigants an unfair advantage or create an appearance of partiality to the reasonable person.”
More importantly, in an attempt to address the challenges the self-represented litigant presents to the trial court,[3] Canon 3(A)(4) now has a commentary which states:
Steps judges may consider in facilitating the right of self-represented litigants to be heard, and which (they might find) are consistent with these principles include, but are not limited to:
(1) making referrals to any resources available to assist the litigant in preparation of the case;
(2) providing brief information about the proceeding and evidentiary and foundational requirements;
*519 (3) asking neutral questions to elicit or clarify information;
(4) attempting to make legal concepts understandable by minimizing use of legal jargon; and
(5) explaining the basis for a ruling.
Nevertheless, as in so many other instances, it is in the application of these standards that difficulties arise. From the outset, as evident in this case, the legislature has incorporated legal jargon in La. R.S. 13:4522. In particular, the statute is made inapplicable “to cases brought in for-ma pauperis.” Although “in forma pauper-is” may be a term of art easily understandable within the legal community, the same may not be [ ¡¡true among the general populace. Alone this may be problematic. However, when read in conjunction with Canon 3 it becomes even more so for the trial judge who is required to be impartial, but who is permitted “to facilitate the abilities of all litigants, including self-represented litigants.” The facts of the present case highlight that problem.
As the opinion of this court shows, the trial judge questioned the self-represented litigant during the hearing on the defendant’s demand for security for costs. The trial judge asked the self-represented litigant: (1) if she’d received the defendant’s memorandum; (2) if she understood that the defendant was asking that a bond for cost be set; (3) if she’d read the codal article cited in support of the bond for cost; (4) if she understood that she was being asked to post a $10,000.00 bond in order to proceed with the litigation. Although she responded “yes” to the trial judge’s questions, she opined the bond amount was substantial for her to provide.
Under the facts of the case now before us, see n. 1, supra, I respectfully suggest that to require the trial judge in the present case to have explained the term “in forma pauperis” and all that entailed, would have caused the trial judge to suggest a defense to the defendant’s motion. Such a position, in my view, would have placed the trial judge in an untenable position, one that Canon 3 guards against.
|4I suggest there are avenues available to ameliorate this seemingly growing concern. At the heart of this solution are means that provide a buffer between the trial judge and the self-represented litigant. Two such examples include: (1) the Pro Se Manual of this court which is intended to assist non-attorneys in the appellate and supervisory writ process; and (2) self-help guides such as that the 9th Judicial District Court developed on its web site to refer self-represented individuals to resources[4] that may assist them. However, to have these resources available is but the first step. Notwithstanding the availability of these resources, it seems crucial that the dissemination of such information to the self-represented litigant from the very inception of litigation is essential to further the search for justice and foster the impartiality of the trial judge. To do otherwise keeps valuable information hidden from the self-represented litigant, thwarts justice, and places an undue burden on trial judges.
For these reasons, I respectfully concur.

. The record shows this self-represented litigant is educated; she is in fact an educator; she was legally astute enough to enter a preliminary default in this matter; she also filed a motion for an extension of time within which to post her bond for costs; and she shows some familiarity with legalese for at one point she filed a pleading "pro se.”

. As later described infra, there exists a large variety of resources in Louisiana to aid the self-represented litigants. To me this speaks volumes to the existence of this growing class of litigants.

.Courts have held pro-se litigants assume responsibility for their lack of knowledge of the law. Food Perfect, Inc. v. United Fire & Cas. Co., 2012-2492 (La. 1/18/13), 106 So.3d 107, 108. See also Ledbetter v. Wheeler, 31,357 (La.App. 2 Cir. 12/9/98), 722 So.2d 382, 384 ("[a]lthough we concede that Ledbetter, as a layperson, was representing himself, a prose litigant assumes all responsibility for his own inadequacies and lack of knowledge of procedural and substantive law.”)

. Among those resources enumerated are: (1) a brochure "Representing Yourself in Court” produced by the LSBA Access to Justice Pro Se Subcommittee; (2) Resources for Self-Represented Litigants developed by the Law Library of Louisiana; (3) legal information and assistance via telephone provided by the Louisiana Civil Justice Center; and (4) online legal information gathered at Louisiana La-wHelp.