NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-154

BROOKS TAYLOR

VERSUS

TIMOTHY BRADLEY, SWEEPING-STRIPING
SERVICES, INC., XYZ INSURANCE CARRIER,
AND GENNALANA, LLC

**********

APPEAL FROM THE
CITY COURT OF LAFAYETTE
DOCKET NUMBER 2019 CV 1578, DIVISION B
HONORABLE DOUGLAS J. SALOOM, CITY COURT JUDGE

**********

SHARON DARVILLE WILSON
JUDGE

**********

Court composed of D. Kent Savoie, Van H. Kyzar, and Sharon Darville Wilson, Judges.

AFFIRMED.

**Brooks Taylor, Pro Se**
**300 Chance Street**
**Lafayette, Louisiana  70502-4303**
**(337) 278-4278**
**PLAINTIFF/APPELLANT:**
        **Brooks Taylor, Pro Se**

**Emile Joseph, Jr.**
**Robert A. Robertson**
**ALLEN & GOOCH, A Law Corporation**
**Post Office Box 81129**
**Lafayette, Louisiana  70598-1129**
**(337) 291-1310**
**COUNSEL FOR DEFENDANT/APPELLEE:**
        **Gennalana, LLC**

**Kraig Thomas Strenge**
**KRAIG T. STRENGE (A Professional Law Corporation)**
**515 W. University Avenue**
**Lafayette, Louisiana  70506**
**(337) 261-9722**
**COUNSEL FOR DEFENDANT/APPELLEE:**
        **Sweeping-Striping Services, Inc.**

**WILSON, Judge.**

Plaintiff/Appellant, Brooks Taylor (Mr. Taylor), filed a petition for damages to his property. He now appeals the judgment dismissing his suit as prescribed. For the reasons that follow, we affirm.

## I.

## ISSUES

We must decide whether Mr. Taylor's suit is prescribed. Mr. Taylor alleges that the trial court failed to consider evidence that would establish an interruption of prescription.

## II.

## FACTS AND PROCEDURAL HISTORY

Mr. Taylor owns a building located at 300 Chance Street in Lafayette, Louisiana. Gennalana, LLC (Gennalana)[1] owns an adjacent piece of property located at 301 Chance Street. In the spring of 2018, Gennalana hired Sweeping-Striping Services, Inc. (SSS) to remove and replace two inches of asphalt in Gennalana's parking lot. The work was completed on May 7, 2018.

In paragraph 2, Mr. Taylor's petition for damages states:

> On or about the spring of 2018, defendant, Timothy Bradley[,] had asphalt work done on his property, specifically the parking lot on Chance St. in Lafayette[,] adjacent to plaintiff's building[.] . . . Plaintiff was not happy with the poor work done as he believed it was not only shoddy but that the drain was not fixed properly on their mutual property line since the asphalt was all piecemeal.

Mr. Taylor alleges that in the late summer or early fall of 2018, he realized that the work done by SSS had, in fact, affected the drainage on his property and was

---

[1] Mr. Taylor initially filed suit against Timothy Bradley (Mr. Bradley) as the owner of the property. Mr. Bradley filed an exception of no right of action asserting that he did not own the property at 301 Chance Street. Mr. Taylor voluntarily dismissed his claims against Mr. Bradley, and an order of dismissal was signed on August 29, 2019. Gennalana owns the property, and Mr. Bradley is the managing member of Gennalana.

causing his property to flood. He alleges that he also realized that the trucks used by SSS had cracked much of the asphalt in his parking lot when they used it as a temporary construction site.

On June 7, 2019, Mr. Taylor filed suit for damages.[2] The suit was amended on July 31, 2019, to name Gennalana as a defendant. Mr. Taylor attempted to file another amended petition for damages on August 8, 2022, to name SSS, XYZ Insurance Carrier, and Gennalana as defendants. His motion for leave was denied.

SSS and Gennalana filed exceptions of prescription. Gennalana introduced text messages from Mr. Taylor to confirm the time frames in which Mr. Taylor became aware of the alleged damages to his property that are the subject matter of this litigation. The exceptions came for hearing on January 19, 2023, and were granted in open court. A judgment granting the exceptions was signed on January 26, 2023, and Mr. Taylor's claims against Gennalana and SSS were dismissed with prejudice. This timely appeal followed.

III.

**STANDARD OF REVIEW**

"[T]he standard of review of a judgment pertaining to an exception of prescription turns on whether evidence is introduced at the hearing of the exception." *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 21-61, p. 4 (La. 12/10/21), 333 So.3d 368, 373. "When evidence is introduced at the hearing, a court need not accept the allegations of the petition as true, and the lower court decisions are to be reviewed under a manifest error-clearly wrong standard of review." *Id.* When the factual findings of the trial court "are reasonable in light of the record reviewed in its entirety, an appellate court cannot reverse even though convinced that had it been

---

[2] Mr. Taylor has represented himself throughout this litigation.

2

sitting as the trier of fact, it would have weighed the evidence differently." *Lomont v. Bennett*, 14-2483, p. 8 (La. 6/30/15), 172 So.3d 620, 627, *cert. denied*, 577 U.S. 1139, 136 S.Ct. 1167 (2016).

Evidence was introduced and testimony was given at the hearing on the exceptions of prescription in this case; therefore, we will apply the manifest error-clearly wrong standard of review. *Mitchell*, 333 So.3d 368.

## IV.

## <u>LAW AND DISCUSSION</u>

This is a delictual action "subject to a liberative prescription of one year." La.Civ.Code art. 3492. "This prescription commences to run from the day injury or damage is sustained." *Id*. "Prescription commences when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort." *Campo v. Correa*, 01-2707, pp. 11-12 (La. 6/21/02), 828 So.2d 502, 510. "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for an inquiry. . . . Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start running of prescription." *Id*. at 510-11.

"Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed." *Campo*, 828 So.2d at 508 (citations omitted).

"Prescription is interrupted when on acknowledges the right of the person against whom he had commenced to prescribe." La.Civ.Code art. 3464. The fifth circuit explained acknowledgment as follows:

> An acknowledgement is a simple admission of liability resulting in the interruption of prescription that has commenced to run[] but not accrued. An acknowledgment interrupts prescription before it has

3

expired, with the prescriptive period beginning to run anew from the time of the interruption. An acknowledgment involves an admission of liability, either through explicit recognition of a debt owed, or through actions of the debtor that constitute a tacit acknowledgement. An acknowledgement sufficient to interrupt prescription may be made verbally, in writing, by partial payment, by payment of interest or by pledge, or in other ways; or it may be implicit or inferred from the facts and circumstances. If the acknowledgment is tacit, it is necessary to ascertain that the alleged facts imply a definite admission of liability.

*Perez v. Sholar*, 22-169, p. 5 (La.App. 5 Cir. 12/14/22), 362 So.3d 874, 878-79 (citations omitted).

Mr. Taylor argues: "*On its face, the prescription should run from the date of the tort and/or the date Appellant knew or should have known that Appellee would not correct the damage it caused, not the date the contract started, that is basic civil code law*[]." This is an incorrect statement of the law. We note again that Mr. Taylor has represented himself throughout these proceedings, however, "a pro se litigant assumes all responsibility for his own inadequacies and lack of knowledge of procedural and substantive laws." *Ledbetter v. Wheeler*, 31,357, p. 3 (La.App. 2 Cir. 12/9/98), 722 So.2d 382, 384.

Mr. Taylor asserts that SSS "acknowledged that they owed a debt for their actions[] and subsequently paid monies to the City of Lafayette to compensate the City for damages caused by its employees." He further asserts he "was always of the belief that the tortfeasor was to repair the damage sustained to his property just as it had repaired the property of the municipality, . . . and appellant had no reason to believe that his damage would not be corrected as well." Mr. Taylor states in his brief that the evidence was "discussed but not considered." This evidence was a booklet that Mr. Taylor allegedly obtained from the City of Lafayette and check issued by SSS to the City of Lafayette in the amount of $6,428.12. Mr. Taylor referenced these documents in his questioning of Mr. Bradley. However, Mr. Taylor did not call a representative of the City of Lafayette to testify, and he did not call a

4

representative of SSS to testify. When the attorneys for Gennalana and SSS objected on the grounds of lack of foundation, the trial court explained to Mr. Taylor that the trial court had been giving Mr. Taylor some leeway but that Mr. Taylor would have to focus on the issue of timeliness. Mr. Taylor questioned Mr. Bradley further about damages that the City of Lafayette may have sustained, but Mr. Bradley responded that he had no personal knowledge about that subject. Mr. Taylor did not attempt to introduce the booklet or the check into evidence. SSS notes that Mr. Taylor's attempt to make the fire hydrant repair part of the contract between Mr. Bradley and SSS to resurface the parking lot is nonsensical because there is no evidence as to how the fire hydrant was damaged. Gennalana argues that Mr. Taylor does not allege that it took any action that could be interpreted as an acknowledgement on its part that would suspend prescription.

In his own testimony, Mr. Taylor admitted that he knew about the damage to the fire hydrant on May 26, 2018. Text messages from Mr. Taylor to Mr. Bradley show that by May 26, 2018, Mr. Taylor was complaining to Mr. Bradley that his property was flooding. These text messages included pictures and made demands for Mr. Bradley to repair Mr. Taylor's property. The trial court made a factual finding that Mr. Taylor knew about the damages to his property on May 26, 2018, and ruled that his suit was filed too late. Mr. Taylor produced no evidence or testimony to refute the text messages, pictures, and videos that show that he had knowledge of the alleged damages on May 26, 2018. Mr. Taylor made no showing that the issuance of the check by SSS implied a definite admission of liability and did not introduce the check into evidence or proffer it. Given the specific facts of this case, we find no manifest error in the trial court's finding that there was no acknowledgement that interrupted prescription. We, therefore, affirm the trial court's grant of the exceptions of the prescription.

## V.

## **CONCLUSION**

The judgment granting the exceptions of prescription filed on behalf of Gennalana, LLC, and Sweeping-Striping Services, Inc., and dismissing the claims of Brooks Taylor with prejudice, is affirmed. All costs of this appeal are assessed to Plaintiff/Appellant, Brooks Taylor.

**AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.